IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAKITA MURPHY                                                    PLAINTIFF
ADC #710981

V.                                NO. 3:21-cv-133-DPM-ERE

PAMELA MALOTT                                                   DEFENDANT

RECOMMENDED DISPOSITION

I.    **Procedure for Filing Objections:**

This Recommendation has been sent to United States District Chief Judge
D.P. Marshall Jr. Any party may file objections if they disagree with the findings or
conclusions set out in the Recommendation. Objections should be specific and
include the factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If you don't object,
you risk waiving the right to appeal questions of fact. And, if no objections are filed,
Chief Judge Marshall can adopt this Recommendation without independently
reviewing the record.

II.   **Background:**

Plaintiff Jakita Murphy, an Arkansas Division of Correction ("ADC") inmate,
filed this lawsuit *pro se* under 42 U.S.C. § 1983, alleging that Sergeant Pamela

Malott ("Sgt. Malott") used excessive force against her on January 20, 2021.[1] *Doc. 2 at 4.*

Pending before the Court are: (1) Sgt. Malott's motion for summary judgment, brief in support, and statement of undisputed facts (*Docs. 40, 41, 42*); (2) Ms. Murphy's motion for summary judgment and statement of facts (*Docs. 48, 49*); and (3) Sgt. Malott's response in opposition to Ms. Murphy's motion. *Doc. 55.* Ms. Murphy has not filed a response in opposition to Sgt. Malott's motion, and the time for doing so has passed. *Doc. 43.* Both motions are now ripe for review.

For the reasons stated below, Sgt. Malott's motion for summary judgment should be granted and Ms. Murphy's motion for summary judgment should be denied.[2]

## III. <u>Discussion</u>:

### A. **Summary Judgment Standard**

Summary judgment is appropriate when the record, viewed in a light most

---

[1] The Court previously dismissed Ms. Murphy's claims against Nurzuhal Faust and Cody Boggs based on her failure to exhaust her administrative remedies. *Doc. 28.*

[2] On October 3, 2022, nearly a month after Sgt. Malott filed her motion for summary judgment, Ms. Murphy filed a supplement to her complaint. *Doc. 53.* In her supplement, Ms. Murphy alleges that, in April and June 2022, Sgt. Malott retaliated against her by issuing her false disciplinaries. Those claims are not related to the claims raised in Ms. Murphy's original complaint, nor could Ms. Murphy have exhausted her administrative remedies those claims before filing her complaint in this case. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory"). Thus, it would be futile to allow Ms. Murphy to add those claims to this action, and the Court will not address those claims in this Recommendation.

favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See Fed. R. Civ. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

**B.    Factual Background[3]**

**1.    Ms. Murphy's Version of Events**

On January 20, 2021,[4] Ms. Murphy attended class in the Step Down Program. *Doc. 2 at 4*. Because she was unable to log in to the system and was suffering from

---

[3] The primary sources of the material facts are: (1) Ms. Murphy's original complaint (*Doc. 2*); (2) Ms. Murphy's deposition testimony (*Doc. 40-1*); (3) Defendant Malott's declaration and incident report (*Doc. 40-3; Doc. 40-5*); (4) the video recording of the underlying incident (*Doc. 40-2*); and (5) photographs taken of Defendant Malott immediately following the incident (*Doc. 40-6*).

[4] In her complaint, Ms. Murphy stated that the underlying incident occurred on January 20, 2021 but, in her deposition, she testified that it occurred on January 19, 2021. *Doc. 40-1 at 4*. According to the video footage of the incident, the altercation took place on January 20, 2021. *Doc. 40-2*.

lower back pain, she asked Officer Woods (not a party to this lawsuit) and Corporal Boggs (no longer a party to this lawsuit), both standing outside of the room, to escort her back to her cell. *Doc. 40-1 at 6*. Sgt. Malott, standing nearby, overheard Ms. Walker's request and stated that the officers would not be taking Ms. Murphy back to her cell. *Id*. Ms. Murphy then asked Sgt. Malott why she would force her to stay in class when she could not log in to the program, and "it kind of went from there." *Id*. Ms. Murphy concedes that she had a "bad attitude" and "was throwing a temper tantrum." *Id. at 7*. Ms. Murphy admits that she called Sgt. Malott a "nasty slut" and that she knowingly allowed Sgt. Mallot to believe, wrongly, that Ms. Murphy told her that she hoped her daughter "died."[5] *Id*.

After a few minutes, Sgt. Malott entered the room where Ms. Murphy was standing, and she issued two direct orders for Ms. Murphy to sit down. *Id*. Sgt. Malott and Ms. Murphy continued to argue, and Sgt. Malott became hostile and walked closer to Ms. Murphy. *Id. at 8*. Sgt. Malott then struck Ms. Murphy with a closed fist on the left side of her face twice. *Id*. at 13. Ms. Murphy told Sgt. Malott that "she hit[] like a bitch," and Sgt. Malott struck her again and sprayed pepper spray into Ms. Murphy's mouth. *Id. at 9, 13*. Ms. Murphy's hands and feet were

---

[5] Ms. Murphy explained that she actually did not state that she hoped that Sgt. Malott's daughter would die, but that is what Sgt. Malott thought she said. Ms. Murphy did not clarify this misunderstanding and stated that she "saw [Sgt. Malott's] reaction" and "went ahead and played along with it." *Doc. 40-1 at 7*.

restrained during the entire altercation. *Id*. She suffered bruising and a pulled muscle in her lower back as a result of the incident. *Id. at 10-11*. Ms. Murphy admits that she was not going to comply with Sgt. Malott's direct order to sit down. In her own words, "there was not going to be any sitting down from me." *Id. at 10*.

As a result of the incident, Ms. Murphy was charged with five disciplinary violations: (1) battery - use of force on staff; (2) throwing/ejecting of bodily fluids/excrement striking person; (3) assault - verbal or written threat; (4) failure to obey order of staff; and (5) breaking into or disrupting line. *Id. at 11*. ADC officials found her guilty of all five disciplinary charges. *Id*.; *Doc. 40-4*.

### 2.    Sgt. Malott's Version of Events

In her sworn declaration, Sgt. Malott states that during incident at issue, she used "only the force necessary so that [Ms. Murphy] could be properly restrained and escorted back to her housing assignment." *Doc. 40-3 at 1*.

Sgt. Malott also provides a copy of an incident report that she completed on January 20, 2021. *Doc. 40-5*. That report recounts the events as follows. Sgt. Malott and Corporal Boggs gave Ms. Murphy direct orders to sit down so that they could remove her restraints properly. *Id*. Ms. Murphy refused to comply and grabbed Sgt. Malott's left hand, which caused Sgt. Malott to suffer fingernail cuts. *Id*. Sgt. Malott continued attempts to have Ms. Murphy sit down by using "mandibular angle pressure point to her left side." *Id*. However, Ms. Murphy continued resisting,

grabbed both of Sgt. Malott's hands, and pulled Sgt. Malott "forcefully" towards her. *Id*. Sgt. Malott managed to get her right hand free and "raised it to inmate Murphy in defense." *Id*. At that time, Ms. Murphy "bent at the waist" and headbutted Sgt. Malott. *Id*. Again, Sgt. Malott attempted to subdue Ms. Murphy using mandibular angle pressure. *Id*. Corporal Boggs then called for "responders" due to an inmate headbutting an officer. At that point, Sgt. Malott stepped away from Ms. Murphy. *Id*. Ms. Murphy then threatened to kill Sgt. Malott while pulling on her arm restraints. *Id*. Sgt. Malott removed her oleoresin capsicum ("OC") spray while issuing direct orders for Ms. Murphy to sit down. *Id*. When Ms. Murphy continued to threaten Sgt. Malott, Sgt. Malott deployed one burst of OC spray, which hit Ms. Murphy in the left side of her face. *Id*. Sgt. Malott and Corporal Boggs then again attempted to get Ms. Murphy to sit down. At that time, Ms. Murphy grabbed Sgt. Malott's left hand. *Id.* Sgt. Malott raised her right hand in self-defense but did not strike Ms. Murphy. *Id*. Corporal Boggs then used a "knee strike" in order to force Ms. Murphy to sit down. *Id*. Ms. Murphy continued to resist, and Sgt. Malott again attempted to subdue Ms. Murphy using the mandibular angle pressure. *Id*. When Sgt. David Sherman arrived, Sgt. Malott stepped back to allow him to control Ms. Murphy. *Id*. At that time, Ms. Murphy turned towards Sgt. Malott, attempted to lunge at her, and spit on her. *Id*. Sgt. Sherman was then able to subdue Ms. Murphy, and she was immediately taken to the shower for decontamination. *Id*.

According to the encounter notes for Ms. Murphy immediately following the incident, ADC staff noted "no obvious injuries" and "no edema, redness, or bruising." *Doc. 40-7*.

### 3.    Video and Photographic Evidence

Sgt. Malott provides a recording of the underlying incident in support of her motion for summary judgment. *Doc. 40-2*. The recording has no audio and unlike regular video footage, it uses still frames approximately one second apart to create a video-like stream. *Doc. 42 at 2*.

As depicted on the recording, at 8:38:19 a.m. on January 20, 2021, Sgt. Malott enters the room where Ms. Murphy is standing. Sgt. Malott approaches Ms. Murphy and, based on her hand motions, appears to be telling Ms. Murphy to sit down. *Doc. 40-2 at 8:38:25*. Although it is unclear how the scuffle between the parties began, both parties struggle with their hands. Ms. Murphy appears to push Sgt. Malott down towards the table while holding her hands. *Id. at 8:38:28-29*. Sgt. Malott then raises her right hand, which possibly contacts the left side of Ms. Murphy's face. *Id. at 8:38:30*. Ms. Murphy then leans toward Sgt. Malott (*Id. at 8:38:31*), and Sgt. Malott pulls out her OC spray. *Id. at 8:38:35*. Sgt. Malott again instructs Ms. Murphy to sit down. *Id. at 8:38:39*. When Ms. Murphy refuses to comply, Sgt. Malott administers a burst of pepper spray to Ms. Murphy's face. *Id. at 8:38:44*. Corporal Boggs then attempts to get Ms. Murphy to sit down. A few minutes later, Sgt. Malott re-engages

and again approaches Ms. Murphy to get her to sit down. *Id. at 8:38:51*. After other officers enter the room and attempt to subdue Ms. Murphy, she finally sits down. *Id. at 8:38:52-8:39:10*. A few seconds later, Ms. Murphy appears to lunge towards Sgt. Malott. *Id. at 8:39:20*. Officers are then able to escort Ms. Murphy out of the room. *Id. at 8:40*.

In addition, Sgt. Malott offers photographs taken of her following the incident. *Doc. 40-6*. Those photographs reveal: (1) a red spot on Sgt. Malott's forehead (*Doc. 40-6 at 1*); (2) spit on Sgt. Malott's clothing (*Id. at 2-3*); and (3) a scratch on Sgt. Malott's hand (*Id. at 4*).

## C.    Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Ms. Murphy's claims against Sgt. Malott for money damages in her official capacity are barred by sovereign immunity.

## D.    Qualified Immunity

Sgt. Malott asserts qualified immunity and seeks summary judgment in her favor. Qualified immunity protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense

at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).

To prevail on her Eighth Amendment excessive-force claim, Ms. Murphy must demonstrate that Sgt. Malott used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). To act "maliciously" means "taking a course of action, without just cause or reason, that was intended to injure the inmate." *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted). An officer who acts "sadistically" engages in "extreme or excessive cruelty" or "delight[s] in cruelty." *Id*. "The word 'sadistically' is not surplusage; 'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (citation omitted).

In evaluating whether the force employed was a good-faith effort to restore order, factors to consider include: (1) the objective need for the force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably

perceived by Sgt. Malott; (4) any efforts made by Sgt. Malott to temper the severity of their forceful response; and (5) the extent of Ms. Murphy's injuries. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

Ms. Murphy and Sgt. Malott's account of what happened differs. However, the video and photographic evidence supports Sgt. Malott's version of events and discredits Ms. Murphy's. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Reed v. City of St. Charles, Mo.,* 561 F.3d 788, 791 (8th Cir. 2009) (affirming summary judgment where "no reasonable jury could have credited [the plaintiff's] version of events"); *Howard v. Columbia Pub. Sch. Dist*., 363 F.3d 797, 800 (8th Cir. 2004) (explaining that a court is not required to "accept unreasonable inferences or sheer speculation as fact").

Although the video and photographs do not show how the scuffle between Ms. Murphy and Sgt. Malott began, they clearly show: (1) Ms. Murphy acting defiantly and refusing multiple direct orders to sit down; (2) Ms. Murphy physically resisting Sgt. Malott's efforts to restrain Ms. Murphy and lunging toward Sgt. Malott; (3) Sgt. Malott raising her hand toward the left side of Ms. Murphy's face

one time in a defensive movement; and (4) Sgt. Malott did *not* punch Ms. Murphy in the face three times, as Ms. Murphy alleges. As a result of the incident, Ms. Murphy caused Sgt. Malott to suffer minor injuries. Based on Mr. Murphy's own testimony, she had thrown a "temper tantrum" and taunted Sgt. Malott before the scuffle began. And once it started, Mr. Murphy had no intention of complying with Sgt. Malott's direct orders to sit down.

Based on this undisputed evidence, no reasonable factfinder could conclude that, assuming Sgt. Malott struck Ms. Murphy one time during the scuffle, Sgt. Malott acted maliciously or sadistically in order to cause Ms. Murphy harm. Rather, it is undisputed that Sgt. Malott was attempting to control a defiant inmate and to restore order and discipline. As a result, no reasonable fact finder could conclude that Sgt. Malott used excessive force by striking Ms. Murphy during the scuffle on January 20, 2021. However, Sgt. Malott's use of chemical spray against Ms. Murphy requires additional analysis.

It is clearly established that mace or chemical spray may be used to control a recalcitrant inmate provided the inmate poses a threat to himself or others.

In *Burns v. Eaton*, an inmate who refused to submit to hand restraints when returning from his shower was sprayed with a chemical agent when he threw a shampoo bottle at the officer and spit at him. 752 F.3d 1136, 1140 (8th Cir. 2014). The Court held that the use of force was appropriate and did not violate the Eighth

11

Amendment. The Court specifically noted that, because the inmate refused the officer's orders, the officer "faced a recalcitrant inmate," and the use of force was justified. *Id. at 1140*.

In addition, in *Sylvester v. Kelley*, an inmate alleged that an officer used excessive force when he struck the inmate's hand twice with a trap bar after the inmate failed to remove his hand from the food trap despite two direct orders. No. 5:18cv00120-JM-JTK, ECF No. 57, 2019 WL 3244590 (E.D. Ark. July 2, 2019) (Report and Recommendation), *report and recommendation adopted*, ECF No. 58, 2019 WL 3244106 (E.D. Ark. July 18, 2021). The Court held that the inmate failed to present any evidence that the officer acted sadistically to cause harm, but that he acted only in good faith to maintain or restore discipline. *Id. at *3*.

The Eighth Circuit has recognized that the limited use of chemical agents by a corrections officer, to control recalcitrant inmates, constitutes a "tempered response" when compared to other forms of force; however, additional factors may be considered in evaluating whether the officer using the force is entitled to qualified immunity. Those factors include whether: (1) a warning given before the chemical agents were used; (2) there was a purpose for using the chemical agents, other than to inflict pain; (3) "super-soaker" quantities of the chemical were used; (4) the inmate was not allowed to wash off the chemical for a prolonged period of time; and (5) in addition to using chemical agents, physical force was used. *Burns*, 752 F.3d

at 1140. According to Ms. Murphy, Sgt. Malott struck her three times in the face with a closed fist, then sprayed her with a chemical agent. In contrast, Sgt. Malott explains that: (1) Ms. Murphy continued to refuse direct orders to sit down; (2) she physically resisted Sgt. Malott's attempts to force her to comply with direct orders; and (3) she lunged at her.

The video evidence provided by Sgt. Malott, while not conclusive, supports her version of the facts and controverts Ms. Murphy's testimony that Sgt. Malott struck her in the face three times with a closed fist. The fact that Ms. Murphy received a disciplinary for assault on an officer is further evidence supporting Sgt. Malott's version of the facts. In the video, Sgt. Malott can be seen standing in front of Ms. Murphy, apparently giving orders for Ms. Murphy to sit down. After Ms. Murphy and Sgt. Malott engaged in a scuffle, Sgt. Malott can be seen removing the chemical agent and again ordering Ms. Murphy to sit down.  There is no audio to confirm this, but Sgt. Malott's body language in the video is consistent with her testimony. When Ms. Murphy did not comply, Sgt. Malott applied a short burst of pepper spray.

The undisputed evidence shows that Sgt. Malott used one short burst of pepper spray in an effort to control Ms. Murphy, who had refused to comply with orders to sit down and engaged in a physical struggle with Sgt. Malott. As in *Burns*, "this is not a case where 'a complete absence of a penological purpose' raised 'the

reasonable inference that the officers acted maliciously in an effort to cause harm.'"
*Burns*, 752 F.3d at 1140 (citing *Williams v. Jackson*, 600 F.3d 1007, 1014 (8th Cir. 2010); *accord Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) ("guards are liable only if they are completely unjustified in using force")). In addition, "there [is no] specific evidence of a malicious motive to harm, or evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive." *Id*.

While Sgt. Malott may have been mistaken in her judgment to administer a chemical agent to a restrained inmate, her conduct did not violate clearly established law. *Jackson*, 866 F.3d at 975 (citing *Whitley v. Albers*, 476 U.S. 312, 322) ("If the evidence shows only 'a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives . . . the case should not go to the jury"). It was not clearly established, as of January 20, 2021, that prison guards were forbidden to use a short burst of pepper spray against an inmate who, even restrained, actively refused direct orders to sit down and used physical force against an officer prior to the officer's use of the chemical agent. As a result, Sgt. Malott is entitled to qualified immunity on Ms. Murphy's excessive-force claim.

## IV.  <u>Conclusion</u>:

IT IS THEREFORE RECOMMENDED THAT:

1.    Sgt. Malott's motion for summary judgment (*Doc. 40*) be GRANTED.

2.      Ms. Murphy's motion for summary judgment (*Doc. 48*) be DENIED.

3.      Ms. Murphy's remaining claims be DISMISSED, with prejudice.

4.      The Clerk be instructed to close this case.

Dated this 12th day of December, 2022.


_____
UNITED STATES MAGISTRATE JUDGE